IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 07-80238 CIV-DIMITROULEAS

MAGISTRATE JUDGE SELTZER

TAKE-TWO INTERACTIVE SOFTWARE, INC.
a Delaware corporation
575 Broadway, 6th Floor
New York, NY 10012

        Plaintiff,

v.

JOHN B. THOMPSON
1172 South Dixie Highway
Coral Gables, Florida 33146

FILED BY _____ D.C.
2007 MAR 13 PM 3:22

## COMPLAINT

Plaintiff Take-Two Interactive Software, Inc. ("Take-Two"), by and through its undersigned attorneys, avers and alleges as follows:

### THE PARTIES

1. Plaintiff Take-Two Interactive Software, Inc., is a Delaware corporation having its principal place of business in New York, New York..

2. Defendant John B. Thompson is a citizen of the State of Florida residing at 1172 South Dixie Highway in Coral Gables, Florida.

### THE NATURE OF THE ACTION

3. Plaintiff, through its wholly-owned subsidiaries including Rockstar Games, Inc., and 2K Games, is the creator, designer, developer, publishers, distributor, and seller of videogames that are sold to the public. Plaintiff intends to release two videogames, <u>Manhunt 2</u> and <u>Grand Theft Auto IV</u> ("GTAIV") in the summer and October of 2007, respectively.

1

Plaintiff anticipates that, based upon the ratings of the prior versions of these titles, both games may be rated by the Entertainment Software Ratings Board as "M" for "Mature," and recommended for sale only to individuals aged 17 and older.

4.  Plaintiff brings this action pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief against Defendant John B. Thompson, to enjoin him from bringing suit on behalf of the State of Florida to enjoin the sale of GTAIV or Manhunt 2 as a nuisance under Fla. Stat. §§ 823.05 and 60.05 – 60.06.

5.  Florida law provides for the abatement of a nuisance under FLA. STAT. §823.05. In turn, FLA. STAT. § 60.05 permits any citizen of a county where the nuisance is alleged to exist to bring suit not in their individual capacity but as a private attorney general on behalf of the State of Florida to enjoin the nuisance.

6.  Application of these statutes to enjoin the sale of GTAIV and Manhunt 2 based solely upon their purportedly "violent" content violates the First Amendment and other provisions of the United States Constitution. Such proceeding would directly restrict the dissemination and receipt of fully protected expression. Further, because of the vague terms of the nuisance statutes, application of those laws to GTAIV and Manhunt 2 also creates a chilling effect as videogame creators, designers, developers, publishers, and distributors will respond to the uncertainty of the law by self-censoring, depriving the public of access to undeniably protected expression.

7.  The relief to be sought by Thompson as a private attorney general is essentially identical to that sought by other laws – specifically adopted to address the sale and distribution of "violent" videogames – that have been struck down as unconstitutional by

numerous courts. Am. Amusement Mach. Ass'n v. Kendrick, 244 F.3d 575 (7th Cir. 2001); Entertainment Software Ass'n v. Blagojevich, 404 F. Supp.2d 1051 (N.D. Ill. 2005); Entertainment Software Association v. Granholm, 426 F. Supp.2d 646 (E.D. Mich. 2005); Video Software Dealers Assoc. v. Maleng, 325 F. Supp. 2d 1180 (D. Wash. 2004); Interactive Digital Software Assoc. v. St. Louis County, Missouri, 329 F.3d 954 (8th Cir. 2003) Video Software Dealers Ass'n v. Schwarzenegger, 401 F. Supp.2d 1034 (N.D. Cal. 2005); Entertainment Software Ass'n v. Hatch, 443 F. Supp.2d 1065 (D. Minn. 2006). In fact, last year a Louisiana statute – drafted with the assistance and guidance of Thompson himself – was struck down by the United States District Court for the Middle District of Louisiana. See Entertainment Software Ass'n v. Foti, 451 F. Supp. 2d 823 (M.D. 2006). See also James v. MeowMedia, Inc., 300 F.3d 683 (6th Cir. 2002) (stating that First Amendment applies to videogames and rejecting attempt to impose tort liability on "violent" content); Wilson v. Midway Games, Inc., 198 F. Supp. 2d 167 (D. Conn. 2002) (same); Sanders v. Acclaim Entm't, Inc., 188 F. Supp. 2d 1264 (D. Colo. 2002) (same).

8. Application of the Florida nuisance statutes to Plaintiff's activities as a creator, designer, developer, publishers, distributor, and seller of videogames will violate the free speech rights of Plaintiff not only through direct restriction but also as a result of the inevitable chilling effect caused by the very threat of suit.

9. Moreover, declaratory relief is especially necessary here because Thompson has a history of making multiple threats of legal action, whether substantiated or not, both against Plaintiff as well as the retailers who purchase the videogames and offer them for sale to the public. Thompson has made such threats again in connection with Manhunt 2 and

3

GTAIV against Plaintiff, its subsidiary Rockstar Games, Inc., and their business partners. Thompson's threats have, on occasion, resulted in a suit at unpredictable times and under unpredictable circumstances, against not only Take-Two but also the retailers who purchase the games for sale to the public. On occasion, Thompson has even brought suit on behalf of the State of Florida, dismissed it, filed again, sought a temporary restraining order, and then failed to pursue that motion. It is precisely these types of uncertain circumstances that declaratory relief under 42 U.S.C. § 1983 was intended to address.

10. Plaintiff maintains that application of the statutes to videogames is unconstitutional under the First and Fourteenth Amendments to the Constitution of the United States and thus actionable under 42 U.S.C. § 1983, and that Plaintiff will suffer immediate, serious and irreparable injury if the statutes are applied to Plaintiff's videogames.

## JURISDICTION AND VENUE

11. This action arises under the Constitution of the United States, the First and Fourteenth Amendments thereto, and the laws of the United States, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343(a)(3).

12. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that it is between citizens of different States and/or aliens and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

13. Venue is proper in this district in that Defendant Thompson resides in this judicial district.

## **BACKGROUND**

14. Under the First Amendment to the United States Constitution, "Congress shall make no law ... abridging the freedom of speech," U.S. Const. amend. I. Under the Fourteenth Amendment, the prohibitions of the Free Speech Clause apply equally to the State of Florida and anyone who seeks to act on its behalf. U.S. Const. amend. XIV.

15. In acting as a private attorney general on behalf of the State of Florida, Thompson seeks to regulate the expressive medium of videogames and limit access to certain videogames based solely on the content of the expression depicted or contained therein.

16. The videogames created, designed, developed, publishers, distributed, and sold by Plaintiff are a form of artistic expression, with extensive storylines and developed characters. Videogames explore the same themes and plots as other forms of literature, such as good versus evil, the corruption of governmental authorities, or the life of criminals.

17. Videogames also contain extensive visual, graphic, animated and computer-generated artwork, as well as original music scores and songs.

18. Accordingly, videogames – likely any other form of verbal, written or visual expression – are shielded by the protections of the First Amendment. Further, the First Amendment also protects videogame depictions of violent conduct.

19. Section 823.05 of the Florida Statutes provides:

> Whoever shall erect, establish, continue, or maintain, own or lease any building, booth, tent or place which tends to annoy the community or injure the health of the community, or become manifestly injurious to the morals or manners of the people ... or any house or place of prostitution, assignation, lewdness or place or building where games of chance are engaged in violation of law or any place where any law of

5

the state is violated, shall be deemed guilty of maintaining a nuisance, and the building, erection, place, tent or booth and the furniture, fixtures and contents are declared a nuisance. All such places or persons shall be abated or enjoined as provided in §§ 60.05 and 60.06.

20. Section 60.05 in turn provides in part as follows:

When any nuisance as defined in § 823.05 exists, the Attorney General, state attorney, city attorney, county attorney, or any citizen of the county may sue in the name of the state on his or her relation to enjoin the nuisance, the person or persons maintaining it, and the owner or agent of the building or ground on which the nuisance exists.

FLA. STAT. § 60.05(1). The law permits the issuance of temporary and permanent injunctive relief. Id. at §§ 60.05(2) and 60.06.

21. Further, the Florida nuisance statutes provide any nuisances that "tend to annoy the community, injure the health of the citizens in general, or corrupt the public morals are misdemeanors of the second degree, punishable as provided in § 775.083, except that a violation of §823.10 is a felony of the third degree." Id. at § 823.01.

22. Defendant Thompson, acting on behalf of the State of Florida rather than his individual capacity, has previously invoked these statutes to seek to enjoin the distribution, within the State of Florida, of videogames that he deems "too violent." More specifically, in the summer of 2005 and the fall of 2006, Thompson brought two suits in the Circuit Court of the Eleventh Judicial Circuit In and For Miami-Dade County, Florida in a matter captioned as <u>John B. Thompson, on behalf of the State of Florida v. Wal-Mart Stores, Inc., Take-Two Interactive Software, Inc., and GameStop, Inc.</u>, Civ. A. No. 06-16311 to enjoin the sale of a T-rated videogame, <u>Bully</u>.

23. In that matter, Thompson first initiated suit against Take-Two as well as the retailers Wal-Mart, Target, GameStop, Circuit City, Toys "R Us and Best Buy in August

6

2005. He dismissed the suit without prejudice weeks later, without pursuing it to completion, then filed suit again a year later against only Take-Two, its subsidiary Rockstar Games, Inc., and Wal-Mart.

24. In the recommenced action, Thompson first sought only a pre-release copy of the <u>Bully</u> videogame for his own viewing, so that he and his "experts" could determine whether they believed that videogame was appropriate for public release. Thompson then sought a unconstitutional "pre-publication" review of the <u>Bully</u> videogame by the court, which was granted over Take-Two's objections, and then a temporary restraining order ("TRO"), which was denied. After his request for a TRO was denied, and an interlocutory appeal was rejected, Thompson dismissed the <u>Bully</u> lawsuit with prejudice in exchange for Take-Two's agreement to withdraw a motion for sanctions.

25. Thompson has threatened to bring a similar suit and seek a similar unconstitutional pre-publication review as to <u>GTAIV</u> and <u>Manhunt 2</u>. Whether or not Thompson ever files such a suit, the very threat of it and the possibility of unconstitutional pre-publication review presents a chilling effect on Plaintiff's First Amendment rights, as well as a disruption in its relationships with the retailers who may be joined as additional defendants in any enforcement action instituted by Thompson on behalf of the State of Florida.

26. The actual filing of any such suit, or request for an unconstitutional pre-publication review would deprive Take-Two of its rights under the First Amendment to the United States Constitution and again disrupt its relationships with the retailers who may be joined as additional party defendants.

## Application of the Statutes to Plaintiff's Videogames Violates the First Amendment

27. By invoking the statutes to restrict the sale of videogames containing "violent" content, Thompson seeks to impose penalties based upon the content of the games' protected expression. Thus, any such application is subject to the strictest scrutiny under the First Amendment.

28. No compelling state interest exists that justifies the broad suppression of speech that would be imposed by application of the nuisance statutes to videogames.

29. Thompson argues that there is a purported State interest in protecting minors from the "nuisance" presented by videogames, *i.e.*, that the use of "violent" videogames causes undefined "harm" to minors. But Thompson cannot seek, on behalf of the State of Florida, to suppress expression based on the theory that it will cause individuals to act violently unless Thompson can demonstrate that the expression is intended and is likely to cause imminent violent conduct.

30. The Florida nuisance statutes contain no such legislative findings and refer to no supporting evidence of any such contention – understandably so, since the nuisance statutes were never drafted nor intended to address expressive content. Further, no such showing could be made, as found by every court to consider the issue.

31. Additionally, other than the narrow exceptions not applicable here, the State may not restrict expressive conduct based upon the theory that it has a negative effect on adults' or minors' thinking, personalities or beliefs.

32. Even if there were a legitimate state interest in abridging the First Amendment rights of Plaintiff or the public, application of the nuisance statutes to videogames is not the least restrictive means of achieving any such goal.

33. Application of the nuisance statutes presents Plaintiff with the certainty of arbitrary and discriminatory enforcement because the statutes lack even minimal standards for enforcement. There are no specific standards for determining whether <u>GTAIV</u>, <u>Manhunt 2</u>, or any other videogame would constitute a "nuisance" under Florida law.

34. Further, the statutes fail to give any reasonable notice of what conduct would be prohibited by the publishers, manufacturers, distributors or sellers of expressive conduct. The term "nuisance" has no clear meaning in the context of videogames, which offer the players a wide variety of choices throughout the long duration of game play.

35. The burdens imposed by applying the nuisance statutes will cause a chilling of speech of by Plaintiff, and the institution of any suit or a pre-publication review of the videogames would deprive Plaintiff of its First Amendment rights.

36. Application of the nuisance statutes to <u>GTAIV</u> and <u>Manhunt 2</u> – or indeed any videogame – also would infringe the First Amendment rights of Plaintiff's customers.

37. In the event Plaintiff prevail on any claims under the Constitution of the United States set forth in this Complaint, Plaintiff is entitled to recover attorneys' fees under 42 U.S.C. § 1988.

## COUNT I
### (First and Fourteenth Amendments – Freedom of Expression)

38. Plaintiff incorporates ¶¶ 1- 37 as if fully set forth herein.

39. Any suit by Thompson on behalf of the State of Florida would seek to restrict access to, and gain an invalid pre-publication review of, videogames based solely upon the content of the creative expression depicted therein. The content of these games does not fall within any other category of expression that may be constitutionally regulated based solely on content.

40. Such suppression of videogames under the nuisance statutes is unsupported by any legislative finding, or underlying evidence, that exposure to such expression is intended and likely to cause imminent violent action by players. Moreover, application of the statutes' stated purpose of preventing "nuisances" to videogames is not based on credible evidence nor sufficient to justify the broad content discrimination against videogames sought by Thompson on behalf of the State of Florida.

41. Thus, application of the statutes to Plaintiffs' videogames fails to serve a compelling government interest, nor is it narrowly tailored to serve any such interest.

42. The statutes provide no standards for determining which videogames would constitute a "nuisance." Application of the nuisance statutes to <u>GTAIV</u> and <u>Manhunt 2</u> – or indeed any videogame – would impose upon Plaintiff the burden of determining whether the content constitutes a "nuisance" prior to selling or otherwise distributing it to the public, or risk criminal penalties. This risk is aggravated by the vagueness of the statute, and the possibility of an invalid pre-publication review by state courts on a county-by-county basis.

43. This would establish an unconstitutional scheme of censorship under which even works of expression that are not a "nuisance" would be suppressed because of the

burden placed on Plaintiff to determine the scope of the term "nuisance" and because of the risk of errors in that determination.

44. Further, retailers who purchase the videogames from Plaintiff would be induced to refuse to include GTAIV, Manhunt 2, or other videogames, for fear of being prosecuted for maintaining a "nuisance."

45. Again, there is no compelling interest for such burdens, and the statutes are not narrowly tailored to serve any such interest in suppressing expressive content.

46. For each of the reasons set forth above, and others, application of the Florida nuisance statutes to GTAIV or Manhunt 2 is unconstitutional under the First Amendment to the United States Constitution, as applied to the State of Florida by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Any such action, including but not limited to the institution of any suit or a request for pre-publication review, would cause Plaintiff to be deprived of the rights, privileges and immunities secured to them by the Constitution and the laws of the United States. Any such action would thus constitute a deprivation of rights actionable under 42 U.S.C. § 1983.

## COUNT II

### (First and Fourteenth Amendments – Vagueness)

47. Plaintiff incorporates ¶¶ 1- 37 as if fully set forth herein.

48. The nuisance statutes as applied to GTAIV and Manhunt 2 is unconstitutionally vague because it fails to give reasonable notice of what conduct is prohibited. The vague terms include, but are not limited to: "annoy the community," "injure the health of the community," "manifestly injurious to the morals or manners of the

people," and "nuisance." These terms have no clear meaning in the context of videogames, and persons of ordinary intelligence are forced to guess at the meaning and scope of the statutes as applied to videogames.

49. This unconstitutional vagueness will have a chilling effect on Plaintiff as well as Plaintiff's customers. Application of the statutes to <u>GTAIV</u> and <u>Manhunt 2</u> will impose substantial burdens upon Plaintiff and its customers, preventing them from exercising their constitutionally protected freedom of expression. The statutes' vagueness as to videogames is also likely to lead to enforcement, on a county-by-county basis, on an unfair, subjective and *ad hoc* basis. Because of the utter lack of clear, defined terms, application of the statutes will restrict a far broader range of videogames than <u>GTAIV</u> and <u>Manhunt 2</u> because Plaintiff's distributors likely will respond to the uncertainty and fear of penalties by withholding Plaintiff's videogames from the public. As a result, Plaintiff's protected expression will not reach willing recipients.

50. For each of the reasons set forth above, and others, application of the Florida nuisance statutes is unconstitutional under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as well as the First Amendment to the United States Constitution, as applied to the State of Florida by the Due Process Clause of the Fourteenth Amendment. Any such action, including but not limited to the institution of any suit or a request for pre-publication review, would cause Plaintiff to be deprived of the rights, privileges and immunities secured to them by the Constitution and the laws of the United States. Any such action would thus constitute a deprivation of rights actionable under 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Take-Two Interactive Software, Inc., demands that this Court enter a judgment in Plaintiff's favor and against Defendant John B. Thompson as follows:

(a) That this Court issue a declaratory judgment that any attempt to apply the Florida nuisance statutes to <u>Grand Theft Auto IV</u> and <u>Manhunt 2</u>, or to any other videogames, is of no force and effect;

(b) That this Court issue an injunction against Defendant John B. Thompson enjoining him from bringing suit individually or on behalf of the State of Florida to enjoin the distribution of, or seek a pre-publication review of, <u>Grand Theft Auto IV</u> and <u>Manhunt 2</u> to any persons in the State of Florida;

(c) That Plaintiff be awarded its attorneys' fees under 42 U.S.C. § 1988;

(d) That Plaintiff be awarded its costs herein; and

(e) That this Court order such other general and equitable relief as it deems fit and proper.

**BLANK ROME LLP**
*Attorneys for Take-Two Interactive Software, Inc.,*
1200 N. Federal Highway, Suite 417
Boca Raton, Florida 33432
Telephone: 561-417-8100
Facsimile: 561-417-8101

By: _____
Howard M. Camerik, Esq.
Florida Bar No. 703435
camerik@blankrome.com
Steven A. Lessne, Esq.
Florida Bar No. 107514
lessne@blankrome.com

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

### I. (a) PLAINTIFFS
TAKE-TWO INTERACTIVE SOFTWARE, INC. a Delaware Corporation

### DEFENDANTS
JOHN B. THOMPSON

(b) County of Residence of First Listed Plaintiff: New York, New York
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Miami-Dade
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Howard M. Camerik, Esq., Blank Rome LLP
1200 North Federal Highway, Suite 417
Boca Raton, FL 33432 -- Tel: 561-417-8100

Attorneys (If Known): 07-80238

(d) Check County Where Action Arose: ☐ MIAMI-DADE ☐ MONROE ☐ BROWARD ☑ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

07CV80238 WPD/BSS

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☑ 440 Other Civil Rights / ☐ 555 Prison Condition | | | |

### V. ORIGIN (Place an "X" in One Box Only)
- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Re-filed- (see VI below)
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page)
a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☐ YES ☐ NO
JUDGE                                DOCKET NUMBER

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
Case arises out of 42 U.S.C. 1983 and the First and Fourteenth Amendments to the Constitution -- seeks a declaratory judgment that Defendant may not use Florida's nuisance statute to gain judicial review and injunction against release of video games.
LENGTH OF TRIAL via 3 days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
HOWARD M. CAMERIK
DATE 3-13-07

FOR OFFICE USE ONLY
AMOUNT 350   RECEIPT #   IFP